Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3876 | **DATE** | Oct. 23, 2002 |
| **CASE TITLE** | Publications International v Leapfrog Enterprises, Inc., | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed pursuant to
       ☐ FRCP4(m)   ☐ Local Rule 41   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss for failure to state a claim is granted with respect to the damages claim in count II, granted without prejudice with respect to count VII, and denied with respect to count V.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | OCT 29 2002 date docketed | |
| | Notified counsel by telephone. | | | 83 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 OCT 28 AM 11:45 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PUBLICATIONS INTERNATIONAL, LTD., )
an Illinois corporation, )
)
Plaintiff, )
) No. 01 C 3876
v. )
) Judge Robert W. Gettleman
LEAPFROG ENTERPRISES, INC., a Delaware )
corporation, )
)
Defendant. )

DOCKETED
OCT 29 2002

## MEMORANDUM OPINION AND ORDER

Publications International, Ltd. filed a seven-count amended complaint seeking injunctive and monetary relief against LeapFrog Enterprises, Inc., alleging numerous violations of the Lanham Act, 15 U.S.C. § 1051 et seq., as well as state law claims of unfair competition, deceptive trade practices, and false advertising.[1] Defendant has filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss three of the seven counts of the amended complaint for failure to state claims. For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND[2]

Publications International, Ltd. ("PIL") is an Illinois corporation, with its headquarters and principal place of business located in Lincolnwood, Illinois. PIL produces, distributes and

---

[1]Defendant has also filed counterclaims for trademark infringement and unfair competition, which are unrelated to the instant motion.

[2]In distilling the factual background of the instant dispute, the court is not limited merely to the allegations in the complaint and exhibits attached thereto. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are both central to the plaintiff's claim and referenced in the complaint. Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).



sells children's books throughout the United States on topics ranging from baby's first vocabulary to favorite bible stories. Since 1990, PIL has used a mark consisting of the words "LEAP FROG" in white block letters, beneath which is the depiction of a green frog displayed against a darker green rectangle, along with the "™" symbol. This designation has been used on a number of PIL's book sets, including collections of Christmas stories, Beatrix Potter animal stories, fairy tales, and nature stories, as well as CD-Roms, plush toys, and flashcards. These products have been sold in a variety of retail venues, including Target, Wal-Mart, K-Mart, grocery stores and bookstores.

LeapFrog Enterprises, Inc. ("LeapFrog") is a Delaware corporation, with its headquarters and principal place of business located in Emeryville, California. LeapFrog's predecessor, LeapFrog RBT, LLC ("LeapFrog RBT") was founded in 1995. LeapFrog sells educational toys for infants and toddlers, including interactive children's books.

In 1984, Willowisp Press, Inc. ("Willowisp I") registered a trademark for children's books consisting of the words LEAPFROG SERIES LIMITED VOCABULARY, arranged in a circle with the depiction of a sitting cross-eyed frog, which was assigned U.S. Reg. No. 1,306,993 (the "'993 registration") by the United States Patent and Trademark Office (PTO). Plaintiff alleges that only two titles bearing this logo were ever distributed or offered for sale by Willowisp I or its successors-in-interest, and the entire saleable inventory of these books was disposed of or sold by July 1988.

On July 29, 1988, Willowisp I merged into School Book Fairs, Inc. ("School Book Fairs"), a Florida corporation; however, this merger was not recorded in the PTO. As a result, title to the '993 registration remained in the name of Willowisp I. On August 2, 1988, a new

corporation bearing the name Willowisp Press, Inc. was incorporated in Florida ("Willowisp II"). According to public records attached to plaintiff's complaint, Willowisp II and Willowisp I had identical addresses, as well as the same board of directors and officers.

In August 1990, Willowisp II filed a combined declaration pursuant to Sections 8 and 15 of the Lanham Act, affirming that the '993 registration had been in continuous use over the preceding five years and was still in use in commerce on children's books, thus preserving the registration of the trademark on the principal register of the PTO. On April 24, 1992, Willowisp II merged into SFB Services, Inc. On July 20, 1994, Willowisp II assigned the '993 registration to School Book Fairs.

In 1995, LeapFrog RBT adopted the word LEAPFROG and a designation consisting of a depiction of a green frog on a block as a trademark for a toy phonics bus. In 1997, LeapFrog RBT applied to register this design mark as a trademark for children's educational toys. The registration was blocked, however, by the '993 registration. Plaintiff alleges that after ascertaining that the '993 registration was not being used in commerce in 1997, LeapFrog RBT sought to purchase the mark and related registration to enable the registration of its own design mark. This purchase was allegedly consummated in a quitclaim assignment on July 18, 1996, in which LeapFrog RBT paid School Book Fairs a "nuisance sum" for an assignment in-gross of bare title to the '993 registration. Plaintiff alleges that neither goodwill nor related business assets was conveyed to LeapFrog RBT with the '993 registration. According to the assignment

document that School Book Fairs recorded with the PTO, however, goodwill was in fact conveyed along with the trademark.[3]

On September 23, 1997, LeapFrog RBT assigned its rights in this trademark to defendant, allegedly without goodwill. Defendant subsequently registered several related marks for electronic educational toys, educational software, school bags and children's books. Moreover, defendant also allegedly adopted and used a number of "LEAPFROG" or "LEAP" formative marks, such as LEAPPAD and LEAPFROG LEARNING POND, in conjunction with the registered trademarks. Plaintiff alleges that defendant has undertaken an aggressive advertising campaign involving these marks, which has caused reverse confusion and misled the trade and consumers into believing that PIL's LEAP FROG books and products "emanated from, or were somehow approved or sponsored by defendant."

Accordingly, in its amended complaint, plaintiff seeks injunctive and monetary relief on the basis of the following seven counts: (I) use of false marks which are likely to cause confusion in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (II) fraudulent maintenance of a federal registration in violation of §§ 14 and 38 of the Lanham Act, 15 U.S.C. §§ 1064(3) and 1120; (III) abandonment of the '993 registration, within the meaning of § 45 of the Lanham Act, 15 U.S.C. § 1127; (IV) false advertising in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (V) deceptive trade practices in violation of the Illinois Consumer Fraud Deceptive Business Practices Act, 815 ILCS 505/2(8); (VI) false advertising and unfair business practices under §§17200 et seq. of the California Business and Professional

---

[3]The court notes that the notice of assignment submitted to the PTO must be distinguished from the actual deed conveying the trademark to LeapFrog RBT.

Code; and (VII) "trade name and trademark infringement and acts of unfair competition in violation of the common law of the states of Illinois, California, and of the other states of the Union." Pursuant to Fed. R. Civ. P. 12(b)(6), defendant has moved to dismiss Counts II, V, and VII for failure to state claims. For the reasons stated below, defendant's motion is granted with respect to Counts II and VII and denied with respect to Count V.

## ANALYSIS

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on the motion, the court considers whether relief is possible under any facts that could be established consistent with the allegations. Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). To this end, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to plaintiffs. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). With these standards in mind, the court analyzes Counts II, V, and VII.

Count II - Fraud in Maintaining a Trademark Registration

Section 38 of the Lanham Act, 15 U.S.C. § 1120, provides:

Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

Section 14(3), 15 U.S.C. § 1164(3), further provides that, at any time, "any person who believes that he is or will be damaged," may file a petition to cancel a fraudulently registered mark.

5

At the outset, the court notes that allegations of fraudulent procurement must be pled with particularity, pursuant to Fed. R. Civ. P. 9(b). Oreck Corp. v. Thomson Consumer Elec., Inc., 796 F. Supp. 1152, 1159 (S.D.Ind. 1992). Hence, a general allegation of fraud without an accompanying recitation of details is insufficient. Id.

In Count II of its amended complaint, plaintiff seeks cancellation of the '993 registration under § 14(3), as well as damages under § 38. Plaintiff alleges that the false Section 8 affidavit filed by Willowisp II constituted fraud, and that defendant "knew or should have known by a cursory examination of the Florida corporate records that the '993 registration was invalid and of no force and effect, and... knew its title to [the '993 registration] rested on a series of invalid assignments-in-gross in which no goodwill or related assets were conveyed with the trademark."

In response, defendant asserts three distinct grounds for dismissing plaintiff's claim for damages under § 38. First, defendant maintains that because plaintiff has not alleged that LeapFrog "procured" the '993 registration, or made any false statements to the PTO, LeapFrog cannot be liable in damages to plaintiff under § 38 of the Lanham Act. Defendant also asserts that Count II is barred by the applicable statute of limitations. Last, defendant contends that plaintiff has not alleged its injury with sufficient particularity, as required under Fed. R. Civ. P. 9(b). Because the court concludes that the first ground for dismissal of Count II is dispositive, the court need not address the potential merits of defendant's other arguments.[4]

Plaintiff maintains that Elec. Info. Publ'ns, Inc. v. C-M Periodicals, 163 U.S.P.Q. 624 (N.D.Ill. 1969), undermines defendant's argument that its alleged awareness of Willowisp II's

---

[4] The court notes, however, that statute of limitations is an affirmative defense, which plaintiff is not required to plead around in a complaint. See Leavell v. Kieffer, 189 F.3d 492, 494 (7th Cir. 1999).

6

fraudulent misrepresentations does not result in liability under § 38. In Elec. Info. Publ'ns, the court imposed § 38 liability on EIP, which had purchased a mark that was obtained through fraudulent representations by another company, Ahrens. In finding liability, the court noted that, at the time of the purchase, EIP knew that Ahrens had not used the mark for several years. Id. at 630. Moreover, after the purchase, EIP "represented, and continued to represent, to the Patent Office... that the two former Ahrens registrations were validly continued," and filed false affidavits with the PTO to maintain its registrations. Id. at 631. The court therefore concluded that the federal registrations at issue were "procured and maintained by [EIP's] purposeful misrepresentation of the facts to the Patent Office concerning [EIP's] and [Ahrens'] transactions and use, and thus were falsely and fraudulently registered within the meaning of [§ 38]." Id. at 632.

Notwithstanding the arguable similarities between Elec. Info. Publ'ns and the instant dispute, and putting aside the appropriateness of awarding § 38 liability for misrepresentations made in connection with maintenance, rather than procurement, of a registration, the court concludes that plaintiff has not stated a claim against LeapFrog under § 38. In contrast to Elec. Info. Publ'ns, plaintiff in the instant case has not alleged that defendant itself made any fraudulent misrepresentations to the PTO in connection with the maintenance of the registration at issue.

The amended complaint merely states that the '993 registration was "fraudulently maintained by the filing of a false Section 8 Declaration... by a declarant that was not the owner of said registration." This allegation conspicuously fails to identify defendant or its predecessor, LeapFrog RBT, as the party that allegedly made the misstatements. Indeed, plaintiff concedes

7

elsewhere in the complaint that Willowisp II actually filed the allegedly fraudulent affidavits. Moreover, the fraudulent misstatements were submitted to the PTO in 1990, five years before LeapFrog RBT, defendant's predecessor, existed as an entity. Consequently, based on the allegations in the amended complaint, any insinuation that LeapFrog acted in concert with Willowisp II when it filed the allegedly fraudulent affidavits is baseless.

Further, the subsequent assignment of the '993 registration to LeapFrog does not result in § 38 liability against LeapFrog. Plaintiff cites to Marshak v. Treadwell, 58 F. Supp. 2d 551, 557 (D.N.J. 1999), aff'd 240 F.3d 184 (3d Cir. 2001), for the proposition that the assignee of a trademark stands in the shoes of his assignors and can have no greater trademark rights than they had. In Marshak, the district court cancelled the plaintiff's trademark after the jury determined that the plaintiff's assignors had invalidly procured a trademark that they subsequently assigned to the plaintiff. Id. at 561. The court notes, however, that the counterclaim at issue in Marshak was brought under § 14(3) for cancellation, and did not involve a § 38 claim for damages. Hence, the court in Marshak expressed no opinion on the appropriateness of levying damages against an assignee for the alleged fraud of his assignors.

Thus, defendant's alleged knowledge of the misrepresentations at the time it purchased the trademark does not support a claim for § 38 liability. Plaintiff cites to Merry Hull & Co. v. Hi-Line Co., 243 F. Supp. 45 (S.D.N.Y. 1965), and Schwinn Bicycle Co. v. Murray Ohio Mfg. Co., 339 F. Supp. 973 (M.D.Tenn. 1971), for the proposition that, to state a claim under § 38, plaintiff need only "allege that LeapFrog had knowledge of any false means or fraudulent or false representations made with respect to the registration at issue." Plaintiff's reliance on these cases is misplaced, however, because both Merry Hull and Schwinn involved allegations that the

8

parties themselves, or their officers, made the misrepresentations in their applications for registration. See, e.g., Schwinn, 339 F. Supp. at 984 ("Before Schwinn can incur liability under [§ 38], Murray must present sufficient evidence to support a finding that Schwinn procured registration by a declaration or representation that is either incorrect or a willful attempt to mislead the Patent Office."). (Emphasis added.) As the plain text of the statute suggests, it is the "procurement" of the fraudulent registration that triggers damages under § 38.

Accordingly, the court concludes that, to the extent Count II purports to state a claim for damages under § 38 of the Lanham Act, that claim must be dismissed. In so holding, the court notes that plaintiff's claim for cancellation under § 14(3) is not affected by this ruling.

Count V - Illinois Deceptive Practices Act

In Count V, plaintiff incorporated the preceding paragraphs of the amended complaint, and asserted that "the aforesaid acts of Defendant, LeapFrog, constitute deceptive trade practices and acts in the conduct of Defendant's business in violation of the Illinois Consumer Fraud Deceptive Practices Act, 815 ILCS 505/2(8)." In its motion to dismiss, defendant maintains that Count V fails to specify which of two Illinois statutes forms the basis of plaintiff's claim, and that the supporting allegations lack sufficient particularity. In response, plaintiff asserts that the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2, has been incorporated into the Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/2. Plaintiff further asserts that it is "well-settled that the elements of a good § 43(a) Lanham Act claim overlap with the elements of a claim under the Illinois Uniform Deceptive Practices Act, provided that conduct within Illinois is involved."

9

The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Consumer Fraud Act") explicitly incorporates § 2 of the Uniform Deceptive Trade Practices Act by prohibiting "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to ... the use or employment of any practice described in § 2 of the 'Uniform Deceptive Trade Practices Act.'" 815 Ill. Comp. Stat. § 505/2. Section 2 of the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2, provides that "A person engages in a deceptive trade practice when...the person... (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services... (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

Having established that the Illinois Consumer Fraud Act does in fact incorporate § 2 of the Uniform Deceptive Trade Practices Act, the next issue becomes the degree of specificity with which plaintiff must plead its claim. Defendant contends that plaintiff's claim is subject to the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b), described above. See Gallagher Corp. v. Massachusetts Mut. Life Ins. Co., 940 F. Supp. 176, 180 (N.D. Ill. 1996). The plain text of the Illinois Consumer Fraud Act belies defendant's contention, however.

On its face, in both its title and the substantive text of the statute, the Illinois Consumer Fraud Act covers several types of conduct in addition to fraud, including all practices that violate § 2 of the Illinois Deceptive Trade Practices Act. See Mitsubishi Elec. Corp. v. IMS Technology, Inc., 1997 WL 630187, at *10 (N.D.Ill. Sept. 30, 1997); Hoffman v. Szyszko, 1995 WL 519815, at *5 (N.D.Ill. Aug. 30, 1995). For example, as noted above, § 2 of the Illinois Deceptive Trade Practices Act provides relief for business activities that create "confusion or

10

misunderstanding as to the source, sponsorship, approval, or certification of goods or services,"[5] as well as "any other conduct which similarly creates a likelihood of confusion or misunderstanding." Such activity, which apparently is relevant to the instant dispute, does not necessarily constitute fraud in a manner that would implicate Fed. R. Civ. P. 9(b). See, e.g., Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc., 657 F. Supp. 1486, 1494 (N.D.Ill. 1987). Therefore, Count V is subject to federal notice pleading, which requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999).

As noted above, in evaluating a motion to dismiss, the court must read the allegations in the complaint in a light most favorable to the plaintiff, and ask whether relief is possible under any facts that could be established consistent with the allegations. Although the court would prefer for plaintiff to specify which subsections were allegedly violated by defendant, plaintiff's failure to do so is not grounds for dismissal under notice pleading. Indeed, the allegations in the complaint are sufficient to put defendant on notice with respect to what claims it must defend against in Count V, notwithstanding plaintiff's typographical errors. Accordingly, the court denies defendant's motion to dismiss Count V.[6]

---

[5]This language is practically identical to the language in § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), asserted in Count I of the complaint, which provides relief for misrepresentations that are "likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Defendant has not asserted that plaintiff's Lanham Act claim is subject to the heightened pleading standards outlined in Fed. R. Civ. P. 9(b).

[6]In the event that plaintiff does file an amended complaint, the court encourages plaintiff to correct errors related to its citations to the Illinois Consumer Fraud Act and Illinois Uniform Deceptive Trade Practices Act.

11

Count VII - Common Law Unfair Competition

In Count VII, plaintiff alleges "trade name and trademark infringement and acts of unfair competition in violation of the common law of the states of Illinois, California, and of the other states of the Union." In its motion to dismiss, defendant contends that plaintiff's incorporation of 91 paragraphs of the complaint fails to notify LeapFrog which paragraphs allegedly support the claim of unfair competition, and that plaintiff's reliance on the law of every state of the union "fails to provide LeapFrog 'fair notice' of exactly what alleged facts and laws it is supposed to defend against."

While the court does not take issue with plaintiff's incorporation of the previous 91 paragraphs of its complaint, the court does conclude that plaintiff must specify which states' common laws are at issue. Indeed, the damages available for an unfair competition claim, as well as the specific elements thereof, may vary significantly from state to state. Hence, the court grants defendant's motion to dismiss Count VII without prejudice.

## CONCLUSION

For the reasons stated herein, defendant's motion to dismiss for failure to state a claim is granted with respect to the damages claim in Count II, granted without prejudice with respect to Count VII, and denied with respect to Count V.

**ENTER:** October 23, 2002

_____
**Robert W. Gettleman**
**United States District Judge**

12